Curia, per

Butler, J.
T}ie testimony given by the plaintiff in the trial referred to in the report, was intended to diminish the damages to be recovered against the de-i fendapt in that case. And the question now is, whether such evidence could, in strictness of Jaw, have affected the verdict of the jury; for if it could, it was both competent and material, and had it been false, might have been the subject of perjury; in other words, did the defendant’s remark, when lie said the plaintiffs had sworn to a lie, impute to them the crime of perjury. The materiality, therefore, qf the plaintiffs’s testimony on the former tria], keporpes a tpatter of serious inquiry.
*3 In an action of trespass to try titles, the object of the plaintiff is, to recover the land, and damages for its use and occupation by the defendant, so that the defendant must direct his defence to the question of damages, as well as the plaintiff’s right to recover the land itself. Can the damage be diminished by any improvements put on the land, or by any value imparted to it by the defendant, depending on the evidence of witnesses ? I take it for granted, that a defendant in a court of law, cannot claim compensation for improvements put upon land before the time it was recovered from him by a plaintiff in an action to try titles to the same. The plaintiff, ¡under his writ of habere facias possessionem, consequent on his judgment of recovery, can take the land and all that pertains to the freehold; the growing crop, and all permanent fixtures, pass to the plaintiff’ under the writ. They were put there by the defendant of his own accord, and without the consent or knowledge of the owner of the land. No one should be bound to make compensation for that which another has done without his directions, and in derogation of his rights. Otherwise, the owner of land might be subjected to liabilities by the wilful act of a trespasser* which he would not have willingly incurred in obeying the dictates of his own judgment. Besides* a proprietor might object to things being done on his land, which another would regard as improvements, and which his witnesses would say were improvements. The very ground which a defendant had cut down and put in cultivation, a plaintiff might prefer should have remained in wood. What oné would have regarded as an improvement to the land, another might regard as an injury to it;
Extreme cases sometimes illustrate principles. Suppose some utilitarian defendant should take possession of a plaintiff’s homestead, and were to cut down the shrubbery and plough up the grounds and garden* and plant them in corn; could he, in an action brought by the plaintiff to recover the land, claim compensation for these improvements, on the ground that the growing crop would go into the possession of the plaintiff? And yet he might do so, if it depended on the evidence of some witnesses,, who would laugh to scorn the idea of ornamental grounds be *4 ing under any circumstances preferable to substantial productions. It is not always true in fact, that a defendant does a plaintiff a benefit by cutting down and clearing his lands, or planting a crop of a particular kind on it; and to allow him to recover, or be paid for such supposed improvements, would lead to fearful consequences.
If such were the case, it would, frequently, be better for one to give up his land, than be compelled to pay for improvements which another has put on it, as their value might be established by the uncertain evidence of prejudiced witnesses. The true principle is, that every one has a right to do as he pleases with his own land, and cannot be compelled to pay another for any thing which he may have done on it, of his own accord, and against the consent of the proprietor. There are cases in which justice and equity would seem to require that compensation should be made for improvements on another’s land. As when one had erected expensive and valuable buildings, under the belief, justly created, that the land was his own. Such cases depend on their own circumstances, and address themselves to a jurisdiction that can do justice to all the parties concerned. We must look at one uniform principle to regulate our decision; and that is, that a defendant is always liable for the use and occupation of a plaintiff’s land, whilst he is entitled to no compensation for improvements which he may have put upon it against plaintiff’s consent. They belong to a plaintiff independently of his right to claim damages equivalent to the rent of the land. Let us apply these remarks to the case under consideration. It is alleged that the present plaintiffs swore, on the trial of Cloud vs. Hughes, that the then defendant had a field of cotton that would have made three bales, and which was not gathered at the time of the trial.
It is suggested, that this evidence having been given in favor of the defendant, was calculated, if true, to reduce the damages which the plaintiff might have recovered against the defendant. It does not follow, if the statement had been true, that the plaintiff' would have derived a benefit. For it might have been, that he could not have picked out the cotton, or that he might have planted the land to better advantage himself. Be that as it may, it is *5 certain that the plaintiff had a right to the cotton, by his recovery; and it is equally certain, from what has been said, that defendant had no right, after the recovery, to claim ány compensation for it, had the plaintiff picked the cotton out and sold it in market.
But it is contended, that it might have been indirectly discounted against the claim of the defendant, for the use and occupation of the land. If this were the case, the defendant could, indirectly, be indemnified for work and labor done on plaintiff’s land, when he could not directly claim compensation for the same. In the view which I take of- the case, the jury had no right to look to any thing the plaintiff was to recover on the freehold, but were bound, in law, to confine their attention to the past occupancy of defendant, and that the true measure of damages to be recovered against him, was the amount of money that the land would have annually rented for.
To illustrate this, suppose the jury had found a verdict something in this way. We find that the annual rent of the land was one hundred dollars, but we find for plaintiff five dollars, because’ the defendant has cleared and improved the land, so as to make it wjorth, by one hundred dollars, more than it was before defendant entered on it. Would such a verdict be allowed to stand by this court % I apprehend not; and that, under the authority of Duff vs. Hutson, 1 Bail. 215, it would have to be set aside. In that case it was proved that the rent of the land, during the time it was in the possession of defendant, was worth from forty to fifty dollars a year. The presiding Judge recommended the jury to find nominal damages, inasmuch as it appeared that the defendant had gone into possession under a fair and honest title. The jury accordingly found for the plaintiff, the land and five dollars damages. Judge Johnson, who delivered the judgment of the Court of Appeals, in speaking of the common law, uses this explicit language, “ that it supplies a commensurate remedy for every wrong. Its forms and modes of trial are adapted to this end; and where, from the nature of the injury, its extent can be ascertained with' certainty, in dollars and cents, the rule of morality, that we should render to évery one his due, becomes a *6 legal obligation.” And for that reason, a new trial was granted; it appearing that the rent of the land had been ascertained by the evidence. From this it would appear, that the value of the rents indicated the minimum of damages to be found by the jury, in all cases, without regard to the question whether the possession had been culpable or excusable. Taking this view of the law, a majority of the court entertain the opinion, that the evidence given by these plaintiffs on a former trial, was immaterial, and that the nonsuit was properly ordered. Motion refused.
O’Neall and Evans, JJ. concurred.